**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-23528-BLOOM/Elfenbein**

GLOBAL WEATHER PRODUCTIONS, LLC,

      Plaintiff,

v.

WOOD PROJECTIONS, INC.,

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Global Weather Productions' First Motion for Partial Summary Judgment ("Plaintiff's Motion"), ECF No. [45], and Defendant Wood Productions, Inc.'s Motion for Summary Judgment ("Defendant's Motion"), ECF No. [46], each filed on November 5, 2025. Defendant filed a Response to Plaintiff's Motion, ECF No. [52], to which Plaintiff filed a Reply. ECF No. [56]. Plaintiff filed a Response to Defendant's Motion, ECF No. [49], to which Defendant filed a Reply. ECF No. [57]. The Court has reviewed the record, the supporting and opposing submissions,[1] the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are denied.

### I.    BACKGROUND

On September 13, 2024, Plaintiff filed a Complaint against Defendant, alleging Direct Copyright Infringement (Count I). ECF No. [1]. On April 4, 2025, Defendant filed its Answer to the Complaint and asserted eleven affirmative defenses: (1) fair use; (2) statute of limitations; (3)

---

[1] Both parties filed Statements of Material Facts with their respective Motions for Summary Judgment, ECF Nos. [45-15], [47], to which each party filed a Response, ECF Nos. [53], [50].

Plaintiff failed to state a claim; (4) laches, acquiescence, estoppel, or waiver; (5) the alleged copyright use was *de minimis*; (6) Defendant's actions were not willful, but innocent; (7) Plaintiff has not suffered actual damages; (8) Defendant did not commercially exploit the video; (9) to the extent Plaintiff suffered any damages, they were caused by Plaintiff's own act or omissions; (10) Plaintiff failed to mitigate damages; and (11) unclean hands. ECF No. [33].

**A. Undisputed Facts**

The following facts are undisputed, unless otherwise noted:

Michael Brandon Clement ("Clement") is a videographer and "storm chaser" by trade and is founder and owner of GWP. ECF No. [45-15] ¶ 1. Clement documents extreme weather phenomena through video capture of on-scene recordings and drone footage, putting himself into unpredictable situations that can result in significant bodily harm. *Id.* ¶ 2. On September 3, 2019, Clement published a video showing a helicopter view of the damage to the Abacos Islands in the Bahamas from Hurricane Dorian ("Video"). *Id.* ¶ 12. Clement selected the subject matter, timing, lighting, angle, perspective, depth, lens, and equipment used to capture the video recording. *Id.* ¶ 15. The Video was created to document the extraordinary weather phenomenon for commercial purposes. *Id.* ¶ 16. Clement registered the Video with the United States Copyright Office ("USCO") on September 25, 2019, under Registration No. PA 2-214-139. *Id.* ¶ 18. In 2021, Clement filed a lawsuit stemming from copyright infringement conduct identified by Clement in 2019, involving the same Video, albeit used by a party other than Defendant. ECF No. [47] ¶ 11. Clement assigned all rights in and to the Video to Plaintiff. ECF No. [45-15] ¶ 19. Plaintiff is the owner of the Video at issue in this case. *Id.* ¶ 3. Plaintiff uses a digital enforcement platform, provided by Meta Platforms, Inc., known as Rights Manager, to identify and flag potentially infringing uses of its copyrighted content across Facebook and Instagram. ECF Nos. [47] ¶ 8; ECF

No. [50] ¶ 8.

Defendant is a for-profit business entity,[2] engaged in the business of the manufacture and sale of Display humidors, cigar lockers, walk-in humidors, Gondolas and fixtures. ECF No. [45-15] ¶¶ 5-6. Defendant is the owner and operator of the social media account on Instagram with the name "@woodprojections" (the "Account"). *Id.* ¶ 8. On September 4, 2019, Defendant's co-owner and Manager Fabiola Karolewicz displayed the Video on the Account. *Id.* ¶¶ 11, 22. The post included a caption[3] stating: "So incredibly fortunate to be spared of this terrible hurricane, people wonder why we freak out when we hear about a hurricane on the way, we lost 2 days of work preparing and taking stuff down, but this is exactly why! #dejavu #wesurvivedandrew #hurricanedorian #luckyus" ECF No. [47] at 3. An excerpt of the Video, which was included in the post, was 36 seconds long and contained a watermark to an NBC news affiliate. ECF Nos. [47] ¶¶ 2, 6; [50] ¶¶ 2, 6. Neither Clement nor Plaintiff ever authorized Defendant to use the Video on the Account. ECF No. [45-15] ¶ 28.

## B. Disputed Facts

The following facts are disputed unless otherwise noted:

Plaintiff alleges that it first became aware that its Video was being displayed on Defendant's Account in 2022. ECF No. [45-15] ¶ 21. Defendant disputes this to the extent Plaintiff "knew or, with reasonable diligence, should have known, of Defendant's alleged use of Plaintiff's Video, prior to 2022." ECF No. [53] ¶ 21. Defendant alleges that Plaintiff "uses a digital

---

[2] Defendant disputes this fact solely to the extent "that Defendant did not profit from the allegedly infringing use of Plaintiff's Video." ECF No. [53] ¶ 5. Defendant does not otherwise dispute that it is a for-profit business entity.

[3] Defendant describes the caption as "expressing empathy and gratitude that South Florida had been spared the storm." ECF No. [47] ¶ 2. Plaintiff disputes this description "to the extent the text accompanying the display references anyone other than Defendant." ECF No. [50] ¶ 2. However, Plaintiff does not appear to dispute the content of the caption since Plaintiff attaches the post, including the caption, as an exhibit. *See* ECF No. [45-8].

enforcement platform, known as Rights Manager, to identify and flag potentially infringing uses of its copyrighted content across various platforms, including Instagram." ECF No. [47] ¶ 8. Although it is undisputed that "Plaintiff uses Meta'[s] Rights Manager to identify displays of its content[,]" Plaintiff disputes the "impli[cation] that Meta's Rights Manager is Plaintiff's own 'digital enforcement platform.'" ECF No. [50] ¶ 8.

Plaintiff states that Defendant uses its Account to feature its products and sales. ECF No. [45-15] ¶ 9. Defendant disputes this "to the extent that the @woodsprojections Instragram [sic] account is primarily used to share[] community, family, and woodworking content, and is not operated for commercial purposes." ECF No. [53] ¶ 9. Defendant states the post was not monetized, not used for paid advertising, and did not include any commercial promotion or links. ECF No. [47] ¶ 3. Plaintiff disputes this, to the extent "the homepage for the @woodprojections social media account includes a direct link to Defendant's associated website which Defendant uses to advertise and promote the sale of its products." ECF No. [50] ¶ 3. Defendant states it "did not receive any monetary gain, leads, or inquiries related to the post." ECF No. [47] ¶ 5. Plaintiff disputes this, to the extent "Defendant received valuable public exposure from the use of Plaintiff's work and further received a monetary benefit in not paying a license fee for the use of said work." ECF No. [50] ¶ 5. Defendant states the post "was shared using Instagram's in-app reposting functionality and was not downloaded or re-uploaded." ECF No. [47] ¶ 20. Plaintiff disputes this "as Defendant has admitted it does not know where it acquired Plaintiff's Video from and asserted it 'may have originated from a third-party new[s] site or user-generated platform and Defendant is unable to identify a specific URL from which the video clip was originally accessed." ECF No. [50] ¶ 20 (quoting ECF Nos. [45-13] at 4-5). Plaintiff also disputes Defendant's statement that the post was shared "using Instagram's in-app reposting functionality" because "Instagram's in-app

repost function was not available to Defendant in 2019, and . . . . Ms. Karolewicz testified that she 'created' the subject post which was 'published' on the Account." *Id.* (citing ECF No. [45-14] at 34:16-25).

### C.  Cross-Motions for Summary Judgment

Plaintiff's Motion seeks summary judgment "on [the] issue of liability for direct copyright infringement[.]" ECF No. [45-16] at 5. Plaintiff argues that, to establish a *prima facie* case for direct copyright infringement, it must show that (1) it owns a valid copyright and (2) that Defendant violated one or more of its rights under the Copyright Act, both of which have been satisfied. *Id.* Defendant responds that Plaintiff's Motion should be denied because (1) the claim is barred by the statute of limitations; and (2) the claim is barred by the doctrine of fair use. ECF No. [52]. Plaintiff replies that (1) Defendant's infringement was not a repost; (2) Defendant failed to raise any question of fact to support its contention that Plaintiff's claims are time-barred; and (3) Defendant's infringement is not protected by the fair use doctrine. ECF No. [56].

Defendant's Motion argues (1) Plaintiff's claim is barred by the statute of limitations; (2) fair use prevents Plaintiff from establishing liability on its claim; (3) Plaintiff has not suffered any damages; (4) to the extent Plaintiff seeks statutory damages, the infringement was innocent; and (5) Plaintiff's claim fails under the doctrine of unclean hands. ECF No, [46]. Plaintiff responds that (1) the claim is not barred by the statute of limitations; (2) the fair use factors do not favor a finding that Defendant's secondary use was fair use; (3) Plaintiff has suffered damages; (4) Defendant is not an innocent infringer; and (5) the unclean hands doctrine does not apply. ECF No. [49]. Defendant replies reaffirming for the reasons stated in the Motion. ECF No. [57].

## II.     LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court construes the evidence in the light most favorable to the non-moving party. *Butler v. Gualtieri*, 41 F.4th 1329, 1334 (11th Cir. 2022). "Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." *Id.* (citing *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir. 1969)).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991). At that juncture, "the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex*, 477 U.S. at 324).

Where the non-movant would bear the burden of proof at trial, "the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Cntys. in the State of Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991)). "Instead, the moving party simply may show . . . that there is an absence of evidence to support the non-moving party's case . . . ." *Id.* (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437–38). However, "[o]n a plaintiff's motion for summary judgment, "the *defendant* bears the initial burden of showing that the affirmative defense is applicable." *Naval Logistic, Inc. v. M/V Fam. Time*, No. 23-22379-CIV, 2024 WL 3691535, at *3 (S.D. Fla. Aug. 6, 2024) (quoting *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997)).

At the summary judgment stage, the court "may not weigh conflicting evidence to resolve disputed factual issues[.]" *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007)). However, the mere existence "of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion[.]" *Id.*

"When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." *Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-cv-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Purcell v. City*

*of Fort Lauderdale*, 753 F. Supp. 3d 1308, 1324 (S.D. Fla. 2024) (quoting *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

### III.   DISCUSSION

To establish a *prima facie* case of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991)). "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

It is undisputed that Clement registered the Video with the USCO on September 15, 2019 and assigned all rights in and to the Video to Plaintiff. ECF No. [45-15] ¶¶ 18-19. Plaintiff attaches the Certificate of Registration. ECF No. [45-4]. Defendant displayed the Video on its Account without a license. *Id.* ¶¶ 22, 23. Therefore, there is no dispute that Plaintiff has established a *prima facie* case of copyright infringement.

Because there is no dispute that Plaintiff has established a *prima facie* case of copyright infringement, to preclude the entry of summary judgment, Defendant must first show that its statute of limitations or fair use affirmative defense[4] is applicable. *See Philadelphia Indem. Ins. Co. v. V. Eng'g & Consulting Corp.,* No. 20-CV-24299, 2021 WL 4709754, at *4 (S.D. Fla. Oct. 8, 2021) (granting plaintiff's motion for summary judgment where defendant asserted numerous affirmative defenses, but "failed to show that any such defenses are applicable in this case"). In order to show that an affirmative defense is applicable, "[t]he defending party must rely on or

---

[4] In its Response, Defendant only references its statute of limitations and fair use affirmative defenses. ECF No. [52].

submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *United States v. Marder*, 208 F. Supp. 3d 1296, 1318 (S.D. Fla. 2016) (quoting *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:14-cv-3129, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015)).

## A. Statute of Limitations

"The Copyright Act's statute of limitations provides that 'no civil action shall be maintained . . . unless it is commenced within three years after the claim accrued.'" *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1330 (11th Cir. 2023) (quoting 17 U.S.C. § 507(b)) (alteration adopted). The Eleventh Circuit recognizes two rules for determining the date on which a copyright claim accrues: "the discovery rule and the injury rule." *Id.* "Under the discovery rule, a claim 'accrues when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his' rights." *Id.* (quoting *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020)). "Conversely, under the injury rule, a copyright plaintiff's claim accrues when the harm, that is, the infringement, occurs, no matter when the plaintiff learns of it." *Id.* (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014)). The Eleventh Circuit[5] has held that "a copyright plaintiff with a timely claim under the discovery rule may recover retrospective relief for infringement that occurred more than three years prior to the filing of the lawsuit." *Id.* at 1334.

Under the injury rule, the three-year statute of limitations would have begun to run on September 4, 2019, when Defendant posted the Video. Because Plaintiff filed the instant action on

---

[5] The Court notes that "[t]o date, the Eleventh Circuit has not explicitly adopted either the discovery rule or the injury rule in the civil copyright *infringement* context. However, in recent decisions related to copyright ownership claims, the Eleventh Circuit has both applied the discovery rule and affirmed a district court's use of that rule.*" Sci. Photo Libr. Ltd. v. Bell Performance, Inc.*, No. 6:23-cv-2302, 2024 WL 3638006, at *2 (M.D. Fla. Aug. 2, 2024) (citing *Dean Guitars*, 955 F.3d at 1276) (emphasis added). Additionally, "the Southern and Middle Districts of Florida have routinely applied the discovery rule in copyright infringement cases." *Id.* at *3 (collecting cases).

September 13, 2024, the claim would be barred under the injury rule. Therefore, if Plaintiff learned, or should as a reasonable person have learned, of the infringement before September 13, 2021, its claim would be barred by the statute of limitations. *Nealy*, 60 F.4th at 1330. In its Response, Defendant argues "there is no genuine dispute that Plaintiff's claim is barred by the statute of limitations . . . because Plaintiff failed to bring suit within three years of when it reasonably should have discovered the alleged infringement[.]" ECF No. [52] at 3 (citing 17 U.S.C. § 507(b)). Even if the Court credited "Plaintiff's assertion that it first learned of the repost of the Video on September 15, 2022, accrual under the discovery rule turns on when Plaintiff knew or, with reasonable diligence, should have known of the alleged infringement." *Id.* at 4 (citing *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124-25 (2d Cir. 2014) and *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438-39 (3d Cir. 2009)).

Plaintiff does not dispute that a three-year statute of limitations applies to its suit but argues that "Plaintiff *did* use the requisite degree of diligence but did not find Defendant's unauthorized use." ECF No. [56] at 8. Plaintiff argues that "Plaintiff's date of actual discovery is its actual date of discovery and Defendant has pointed to nothing in the record to suggest otherwise." *Id.* However, Defendant points out that "Plaintiff's Rule 30(b)(6) representative admitted that Plaintiff was actively monitoring its copyrights during 2018 and 2019 and that Plaintiff had previously filed a separate lawsuit involving the very same Video for 'infringing' conduct identified in October 2019." ECF No. [52] at 4 (citing ECF No. [46] at 6). Indeed, Clement, Plaintiff's Rule 30(b)(6) representative, testified that he had been monitoring his copyrights "since 2018, 2019[.]" ECF No. [47-2] at 28:11-17. He also began using monitoring services, such as Rights Manager, "somewhere around 2018 when the system came out. They identified [Clement's] page as being a page that was heavily infringed and offered it to [him] early on." *Id.* at 28:4-10. Although Plaintiff notes that

Clement testified Rights Manager only "sometimes works[,]" *id.* at 26:22-27:1, Clement also stated that "[b]ack in 2018, 2019, something like that through 2022, Rights Manager was actually pretty effective." *Id.* at 27:13-15. Based on this conflicting testimony, Defendant has shown that the statute of limitations affirmative defense is applicable and it has demonstrated a genuine dispute of material fact as to when Plaintiff, with reasonable diligence, should have known of the alleged infringement. Therefore, Plaintiff's Motion is denied.

To the extent Defendant argues that its Motion should be granted because there is no genuine dispute of material fact that the statute of limitations bars Plaintiff's suit, Defendant's Motion is denied for the same reason that Plaintiff's Motion is denied. There is a genuine dispute of material fact as to whether, with reasonable diligence, Plaintiff should have discovered the infringement. Defendant argues that "[c]ourts applying the discovery rule look to whether the plaintiff exercised reasonable diligence and whether 'storm warnings' triggered a duty to investigate." ECF No. [46] at 7 (citing *Psihoyos*, 748 F.3d at 124-25 and *Haughey*, 568 F.3d at 438-39). Specifically, Defendant argues that Plaintiff "filed a copyright claim in October 2019 involving the very same video . . . confirming that it was focused on that work and related uses during the relevant period." ECF No. [46] at 8. Therefore, "[t]hat contemporaneous lawsuit is powerful 'storm-warning' evidence of awareness that triggers a duty to investigate related, readily discoverable uses." *Id.* However, as Plaintiff points out, "Clement testified that 'hundreds of thousands of accounts' have stolen his content, creating a 'massive, massive problem.'" ECF No. [49] at 12 (quoting ECF No. [47-2] at 13:9-20). Therefore, "[t]he sheer volume of potential infringements makes it impossible to discover all or any given one at any given time." *Id.* Indeed, if the Court were to accept Defendant's argument that Clement's awareness that another entity was infringing upon the Video constitutes a "storm-warning concerning this Defendant," the logical

conclusion of this argument would be that whenever Plaintiff discovers one infringer, it is on "notice of the entire internet" of infringers. *Id.* Defendant's reliance on Clement's testimony that Rights Manager is "pretty effective" is not sufficient to meet its burden of demonstrating that there is "no genuine dispute of material fact" as to the statute of limitations affirmative defense. *See* ECF No. [57] at 2-3. Therefore, Defendant's Motion is denied as to the statute of limitations affirmative defense.

### B.  Fair Use

"The fair use doctrine is a statutory exception to copyright infringement, which seeks to balance First Amendment concerns with the protections otherwise afforded authors by the Copyright Act." *Latimer*, 601 F.3d at 1238. Pursuant to Section 107 of the Copyright Act, "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In order to determine whether the use of copyrighted work is a fair use, the factors to be considered include:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

> *Id.*

Those statutory factors "provide courts with tools to determine—through a weighing of the four factors in light of the facts of a given case—whether a finding of fair use is warranted in that particular instance." *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1259 (11th Cir. 2014). Because fair use is an affirmative defense, "its proponent bears the burden of proof in

demonstrating that it applies." *Id.* It is also "a mixed question of law and fact." *Katz v. Chevaldina*, 900 F. Supp. 2d 1314, 1315 (S.D. Fla. 2012) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985)).

### i.     Factor One: Purpose and Character

The first statutory factor "requires consideration of '(1) whether the use serves a nonprofit educational purpose, as opposed to a commercial purpose; and (2) the degree to which the work is a transformative use, as opposed to a merely superseding use, of the copyrighted work.'" *Katz v. Google Inc.*, 802 F.3d 1178, 1182 (11th Cir. 2015) (quoting *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.,* 533 F.3d 1287, 1309 (11th Cir. 2008)).

As to whether the use of the Video serves a nonprofit educational purposes versus a commercial purpose, Defendant argues that there is "no genuine dispute that Defendant's purpose in Reposting the Video was to comment on a local, newsworthy event[,]" a purpose which "is apparent from the on-its-face commentary accompanying the Repost, by its hashtags and is confirmed by Defendant's corporate representative." ECF No. [46] at 11. Although Defendant states the post was not monetized, not used for paid advertising, and did not include any commercial promotion or links, ECF No. [47] ¶ 3, Plaintiff disputes this, to the extent "the homepage for the @woodprojections social media account includes a direct link to Defendant's associated website which Defendant uses to advertise and promote the sale of its products." ECF No. [50] ¶ 3. Plaintiff argues that "Defendant's appropriation of Plaintiff's Video was part of a commercial venture" because Defendant's Account "simply serves as a conduit to stay in touch with its client base and promote its merchandise." ECF No. [49] at 16. Plaintiff also notes that the caption "references a loss of work productivity, specifically 'we lost 2 days of work preparing and taking stuff down, but this is exactly why!'" *Id.* Indeed, courts have recognized that even if a

defendant "did not directly profit from the use" of copyrighted material, "it stood to gain from the visitors that the [copyrighted material] attracted to its website." *Aug. Image, LLC v. AllWrite Commc'ns Inc.*, No. 23-cv-00910, 2024 WL 4505000, at *6 (N.D. Ga. Sept. 10, 2024); *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 353 (S.D.N.Y. 2017) (use of copyrighted images on website "in order to lure traffic" contributed to finding of commercial nature). Therefore, there is a genuine dispute as to whether the use of the Video served a commercial purpose.

As to whether the use of the Video was transformative, "[d]etermining whether a use is transformative requires asking 'whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1221 (11th Cir. 2021) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. Although Defendant argues that it transformed the Video by "pair[ing] a source-branded (NBC) snippet with commentary and hashtags to inform, and reassure with gratitude, that Mr. and Mrs. Karolewicz were safe after the storm, thereby, recontextualizing a stand-alone [electronic news gathering] asset into a weather update for friends, family, and a few followers[,]" ECF No. [46] at 13, Plaintiff avers that Defendant "did nothing more than repackage Plaintiff's Video on its Account for the same purpose the Video was created, specifically to document the destruction caused by the hurricane." ECF No. [49] at 17. Whether or not Defendant's use of the Video was transformative depends, in part, on the purpose of the Video. As such, there is a genuine dispute of material fact as to whether the Video was transformative.

### ii.        Factor Two: Nature of the Work

"[B]ecause works that are highly creative are closer to the core of copyright—that is, such works contain the most originality and inventiveness—the law affords such works maximal protection, and hence it is less likely that use of such works will be fair use." *Patton*, 769 F.3d at 1268. Therefore, in general, "fair use is more likely to be found in factual works than in fictional works." *Stewart v. Abend*, 495 U.S. 207, 237 (1990). There is no dispute that the Video depicts a factual event: "the damage to the Abacos Islands in the Bahamas from Hurricane Dorian." ECF No. [45-15] ¶ 12. However, Plaintiff argues that the Video reflects "a number of creative determinations as to the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to create the video recording." ECF No. [49] at 18; *see* ECF No. [47-3] at 8 (infringing post with Video excerpt). Plaintiff also argues that Clement "immersed himself in the moment and captured the event from his singularly unique perspective." *Id.* at 19.

As Defendant points out, "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy[.]" ECF No. [46] at 15 (quoting *Patton*, 769 F.3d at 1268). Although it may have taken a significant amount of effort to obtain the footage, the excerpt of the Video depicts helicopter footage of damage following a hurricane. ECF No. [47-3] at 8. It also contains an NBC logo, further illustrating that the Video is being used for news coverage. *Id.* This footage, which "was created to document the extraordinary weather phenomenon for commercial purposes[,]" ECF No. [45-15] ¶ 16, is not the type of work that "contain[s] the most originality and inventiveness [,]" such that "the law affords [it] maximal protection[.]" *Patton*, 769 F.3d at 1268. Therefore, the second factor weighs in favor of fair use.

### iii.   Factor Three: Amount and Substantiality

In order to analyze the "amount and substantiality of the portion used," courts look "to the 'copyrighted work as a whole,' not to the putatively infringing work." *Peter Letterese*, 533 F.3d at 1314-15. Additionally, courts consider "not only . . . the quantity of the materials used, but . . . their quality and importance, too." *Id.* at 1315 (quoting *Campbell,* 510 U.S. at 587). "[T]his factor is intertwined with the fourth factor and partly functions as a heuristic to determine the impact on the market for the original." *Id.* at 1314.

Although Defendant argues that it "used only a short excerpt from a 3:50 deposit copy, no more than reasonably necessary to convey the newsworthy moment[,]" ECF No. [46] at 16, Plaintiff argues "it is obvious that Defendant took the 'heart' of Plaintiff's work." ECF No. [49] at 19. Indeed, the Court's analysis of the third factor requires that it consider not only "the quantity of the materials used," but also "their quality and importance, too." *Campbell*, 510 U.S at 587. Because this factor is evaluated in "light of the purpose and character of the use," it is "intertwined with the first factor." *Patton*¸ 769 F.3d at 1271. Considering the Court's finding that there is a genuine dispute of material fact as to the purpose of the Video's use, there remains a genuine dispute of material fact as to the amount and substantiality of the portion used. 17 U.S.C. § 107(3).

### iv.   Factor Four: Effect of Use Upon Potential Market or Value

The fourth factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market" for the original." *Campbell*, 510 U.S. at 590 (quoting 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.05[A][4], p. 13-102.61 (1993)). "The 'central question' is whether, assuming that everyone engaged in the conduct of the defendant, the use 'would

cause *substantial* economic harm such that allowing [the conduct] would frustrate the purposes of copyright by materially impairing [the defendant's] incentive to publish the work.'" *Katz*, 802 F.3d at 1184 (quoting *Patton*, 769 F.3d at 1276). A proponent of the fair use affirmative defense "would have difficulty carrying the burden of demonstrating fair use without favorable evidence about relevant markets." *Campbell*, 510 U.S. at 590.

Defendant argues that Plaintiff has not identified any "specific lost license traceable to Defendant's brief Instagram Repost and admits no actual-damage computation; its ENG pricing is non-exclusive and not seconds-based[.]" ECF No. [46] at 16 (citing ECF No. [47] ¶ 25). Moreover, Defendant contends Plaintiff failed to "identify a distinct, cognizable derivative market" that Defendant's "use could possibly displace" because "[t]he market Plaintiff actually pursues is selling news licenses to media outlets for broadcast and digital publication of the full work (or editorially selected portions)[.]" *Id.* at 17. Plaintiff responds that Defendant "seeks to impermissibly shift the burden to Plaintiff to disprove this point, rather than on Defendant to prove [the] same." ECF No. [49] at 20-21.

Plaintiff is correct that "because fair use is an affirmative defense, its proponent bears the burden of proof in demonstrating that it applies." *Patton*, 769 F.3d at 1259. Applying *Patton's* test, Plaintiff argues that "if the practice of using Plaintiff's works without licensing were to become widespread, it is intuitive that the market for such works would diminish correspondingly." ECF No. [49] at 21. In its Reply, Defendant fails to address Plaintiff's argument that Defendant has the burden to establish the fair use affirmative defense, but instead focuses on the disputed assertion that "Defendant made no profit from the alleged use of the Video" and that "Plaintiff identified no specific lost license traceable to Defendant's allegedly infringing use of an excerpt of the Video." ECF No. [57] at 5. Defendant has not put forward any "favorable evidence about relevant

markets[,]" *Campbell*, 510 U.S. at 590, but instead asserts the disputed fact that the purpose of Defendant's post was "entirely different from that of the original Video[.]" ECF No. [57] at 4. Therefore, a genuine dispute of material fact exists as to the fourth factor.

Given the genuine disputes of material fact relating to three of the four factors, Defendant has failed to meet its burden, and Defendant's Motion is denied as to the fair use affirmative defense. *See Peter Letterese*, 533 F.3d at 1319. ("Given the lack of sufficient evidence disproving the likelihood that widespread dissemination of the WISE Sales Course would supplant PL&A's market for derivative works, the fourth factor also favors PL&A with respect to those course materials. Defendants have therefore failed to prove their entitlement to summary judgment based on fair use."). Nevertheless, Defendant has shown that its fair use affirmative defense is applicable and there is a genuine dispute of material fact. Therefore, Plaintiff's Motion is denied.

### C. Damages[6]

Defendant argues that, even assuming *arguendo* that Plaintiff could establish that Defendant is liable for copyright infringement, "the record proves no recoverable damages." ECF No. [46] at 18. Plaintiff responds that Clement "testified to this issue and directly identified a loss of licensing revenue for Defendant's Infringement." ECF No. [49] at 22; *see* ECF No. [47-2] at 22:1-8 ("This video had several different licenses ranging from 19 to $30,000."). Additionally, Plaintiff notes that it "has the right to elect statutory damages, as a matter of law[.]" ECF No. [49] at 23. Indeed, 17 U.S.C. § 504(a) provides that "an infringer of copyright is liable for either . . .

---

[6] The Court notes that although Defendant treats a failure to prove actual damages as an affirmative defense, this Court has previously found that a denial of a plaintiff's allegations of damages "should be treated as a denial" and "is not an affirmative defense." *XYZ Corp. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 23-cv-24366, 2024 WL 3673009, at *6 (S.D. Fla. Aug. 6, 2024); *Lindemann v. FD Holdings LLC*, No. 24-cv-1444, 2025 WL 3654220, at *5 (M.D. Fla. Feb. 11, 2025) (argument that plaintiff "suffered no damages . . . is better considered as a denial rather than as an affirmative defense"). Defendant does not cite any caselaw to support its argument that failure to prove actual damages is an affirmative defense to copyright infringement. *See* ECF No. [33] at 6 (listing "Plaintiff has not suffered actual damages" as an affirmative defense). Therefore, the Court interprets Defendant's argument that Plaintiff has failed to prove actual damages as addressing Plaintiff's *prima facie* case.

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages[.]" 17 U.S.C. § 504(a).

Defendant appears to concede that Plaintiff would be entitled to statutory damages, stating that "even if 'Plaintiff has the right to elect statutory damages, as a matter of law,' . . . such damages should be offset on the basis that Defendant—if liable for infringement—is an innocent infringer[.]" ECF No. [57] at 6 (quoting ECF No. [46] at 17) (internal citation omitted). Therefore, Defendant has not met its burden on its Motion.

### D. Innocent Infringement

Defendant argues that "to the extent that Plaintiff seeks statutory damages, the record compels a finding of innocent intent warranting a substantial reduction in statutory damages under 17 U.S.C. § 504(c)(2)." ECF No. [46] at 19. Defendant argues that the evidence reflecting that it "made a good faith, noncommercial repost with no intent to infringe, no revenue, and no attempt to conceal the use. The inclusion of the original source watermark (NBC), removal upon notice, and lack of any prior warnings or licensing communications from Plaintiff," demonstrates that it was an innocent infringer. *Id.* Plaintiff responds that "[w]hile Defendant may have not known that the Video was Plaintiff's, it certainly had every reason to belie[v]e that *someone* held the rights to the Video." ECF No. [49] at 23. Plaintiff states that, "by virtue of the [NBC] watermark, Defendant would have at least been infringing on NBC." *Id.*

Section 504(c)(2) provides that, where the court finds the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). Because it is undisputed that the excerpt of the Video that Defendant included in its

post contained an NBC watermark and it is disputed as to whether Defendant "reposted" the Video, there is a genuine dispute of material fact as to whether Defendant was an innocent infringer.

### E. Unclean Hands

Defendant argues that "Plaintiff's claim fails under the maxim of unclean hands." ECF No. [46] at 19. Specifically, Defendant argues that Plaintiff has unclean hands on four bases: (1) "Plaintiff relied on an intentionally altered screengrab that omits the NBC watermark and caption, context and commentary, mischaracterizing the nature and purpose of the Repost thereby also inflating willfulness"; (2) "Plaintiff's 30(b)(6) witness conceded that a native Reposting . . . would not be actionable and focused instead on download/re-upload theory which did not occur in this case"; (3) "Plaintiff seeks statutory damages/fees while admitting no actual-damages calculation, no expert, and no identified lost license, despite an ENG, non-exclusive 'price-is-the-price' model"; (4) "the volume of suits and revenues from lawsuits (vs. licensing) show a fee-leverage model untethered to market substitution"; and (5) Plaintiff has misused its copyright. ECF No. [46] at 20-21.

Plaintiff responds (1) that it did not rely on an intentionally altered screengrab; (2) Defendant did not "Repost" the Video because the Repost feature was not available at the time Defendant made the post; (3) Plaintiff has properly alleged statutory damages and actual damages; (4) Defendant's "failure to address this matter necessitated the instant lawsuit"; and (5) Plaintiff has not misused its copyright. ECF No. [49] at 24-25. Defendant also argues that Plaintiff has "abused this litigation to seek an exorbitant amount of damages . . . as part of a pattern of selective litigation in over 100 cases across the Nation." ECF No. [57] at 7.

For a defendant to successfully avail itself of the doctrine of unclean hands, it must (1) "demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is

asserted" and (2) "show that it was personally injured by [the plaintiff's] conduct." *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993). The defense of unclean hands has been applied where the "'plaintiff misused the process of the courts by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party,' or 'when the plaintiff obtained information as to the nature of defendant's work through unfair means.'" *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1283 (M.D. Fla. 2008) (quoting 3 Nimmer on Copyright, § 13.09[B] (1991)).

Most of Defendant's arguments purporting to support a finding that Plaintiff has "unclean hands" amount to nothing more than a disagreement with Plaintiff's arguments and strategy throughout the course of the litigation. The sole allegation that could arguably qualify as "wrongdoing" would be that Plaintiff "relied on an intentionally altered screengrab[.]" ECF No. [46] at 20 (citing ECF Nos. [47] ¶¶ 1, 2; [1-2]). Although Defendant is correct that Plaintiff included in its Complaint and Statement of Material Facts a screengrab of the post that does not include Defendant's accompanying caption, Plaintiff disputes that "the documentation submitted in support of Plaintiff's Complaint intentionally excluded any information regarding the Infringement." ECF No. [50] ¶ 14. Plaintiff also points out that its "earlier outreach and subsequent submissions provided all information regarding the infringing display at issue." *Id.* (citing ECF Nos. [45-8] at 3; [45-5] at 2). Therefore, there is a genuine dispute of material fact as to whether Plaintiff's actions constitute unclean hands.

Regarding Defendant's argument that Plaintiff has misused its copyright, the Eleventh Circuit "has not recognized, but has not rejected, misuse as a defense for infringement suits." *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004). Courts that have recognized the copyright misuse defense state that it "has its historical roots in the unclean hands

Case No. 24-cv-23528-BLOOM/Elfenbein

defense" and that it "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999).

Defendant argues that Plaintiff has misused its copyright by "attempt[ing] to use [Defendant's] post to suppress noncommercial, informational Reposting on a small business Instagram page, while seeking leverage through statutory damages and fees despite no market substitution[.]" ECF No. [46] at 21-22. Plaintiff responds that, even if this Court recognized the availability of a copyright misuse defense, it is not applicable here because Defendant's argument "functions on a presumption that Plaintiff's content is free to any individual/business operating on the planet so long as they find it of interest." *Id.*

Indeed, it is undisputed that Plaintiff holds the copyright to the Video, ECF No. [45-15] ¶ 19, so it is unclear what "exclusive right or limited monopoly *not* granted by the [Copyright] Office" is at issue. *Home Design*, 2005 WL 1027370, at *11 (quoting *Alcatel*, 166 F.3d at 792). Accordingly, there is a genuine dispute of material fact as to Defendant's copyright misuse defense.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for Partial Summary Judgment, **ECF No. [45],** is **DENIED**;

2.  Defendant's Motion for Summary Judgment, **ECF No. [46]**, is **DENIED**;

Case No. 24-cv-23528-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida on January 5, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record